## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHAEL LEGO and PAMELA LEGO,

     Plaintiffs,

v.                                                                    Case No. 11-13834

ED GERDS, et al.

     Defendants.

_____/

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING WITHOUT PREJUDICE PLAINTIFFS' STATE-LAW CLAIMS

Before the court is Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12 and 56 which the court construes as a Rule 12(b)(6) motion to dismiss for failing to state a claim upon which relief can be granted. Having reviewed the complaint and briefs, the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, the court will grant Defendants' motion with respect to Plaintiff Detective Michael Lego's federal claims and decline to exercise supplemental jurisdiction over Plaintiffs' state claims.

### I. BACKGROUND

The material facts underlying Plaintiffs' claims are undisputed. In October 2009, the Western Wayne Community Response Team ("CRT"), a specialized multi-jurisdictional police task force, began investigating a series of armed robberies in Wayne County, Michigan. (Compl. ¶ 13, Dkt. # 1.) During the course of the investigation, CRT identified Lebron Bronson as a suspect in the robberies and began surveiling him. (*Id.*) On October 29, 2009, members of CRT, and the Western Wayne

Narcotics task force ("WWN"), including Detective Lego and Defendant Sergeant Keely Cochran, followed Bronson to a Verizon Wireless store in Plymouth Township, Michigan and observed Bronson enter the store carrying a handgun and concealing his face, obviously prepared to commit an armed robbery. (*Id.* ¶¶ 17-18.) Lego, Cochran, and an unidentified detective assumed positions against the exterior wall of the store in a tactical "stacking" formation. (*Id.* ¶ 19.) Defendant Specialist Jake Liss, a member of WWN, arrived at the scene shortly after Bronson entered the store and joined the "stacking" formation immediately behind Detective Lego. (*Id.* ¶¶ 19-20.) When Bronson walked out of the store, Detective Lego ordered him to drop his weapon. (*Id.* ¶ 21.) Bronson ignored the command and pointed the gun at Lego, whereupon Lego fired two rounds that struck Bronson in the chest. (*Id.* ¶¶ 21-22.)

Simultaneously, Specialist Liss discharged a single round from his weapon which unfortunately hit Detective Lego. The round entered and exited Lego's right shoulder, ricocheted off his rifle and struck both his right and left hands. (*Id.* ¶ 23.) Lego alleges that Liss either "unintentionally fired" his weapon when he heard him discharge his weapon, or, alternatively, "Liss intentionally fired his weapon without insuring that Lego was safely out of the line of fire." (*Id.* ¶¶ 24-25.) Under either theory, Lego admits that the complaint does not allege that Liss at any time intended to harm him. (Pls.' Resp. to Defs.' Mot. to Dismiss 5 n.3, Dkt. # 14.) Nevertheless, Lego states that he lost two fingers on his left hand, experiences chronic pain caused by nerve damage, and suffers from post traumatic stress disorder. (Compl. ¶ 26.)

Plaintiffs filed suit on September 2, 2011, alleging a number of federal and state claims. Count I alleges federal causes of action pursuant to 42 U.S.C. § 1983 for (1)

2

violation of Lego's Fourth Amendment right to be free from unreasonable searches and seizures and the unlawful use of force, and (2) denial of Lego's Fourteenth Amendment substantive due process rights.  Specially, Lego alleges that Liss "recklessly, unreasonably, without privilege or justification and in deliberate indifference to Lego's safety, joined in the apprehension of Bronson and failed to follow required safety protocols," (*Id.* ¶ 34), and that Cochran, commander of WWN, and Lieutenant Ed Gerds, commander of the Western Wayne Criminal Investigation Bureau ("WWCI"), violated their "duty to properly train, supervise, and direct the officers under their command," (*Id.* ¶ 31).  Plaintiffs also assert two claims under state law against all Defendants.  In Count II, Lego states a gross negligence claim, and in Count III, Plaintiff Pamela Lego, Lego's wife, asserts a loss of consortium claim.

## II. STANDARD

In lieu of filing an answer to Plaintiffs' complaint, Defendants have filed a motion under both Federal Rule of Civil Procedure 12 and Federal Rule of Civil Procedure 56. The court will construe the motion as a Rule 12(b)(6) motion to dismiss for failing to state a claim upon which relief can be granted.  Accordingly, pursuant to Rule 12(d), all evidentiary material submitted by Defendants will be excluded from the court's consideration of the legal sufficiency of the complaint.  To avoid dismissal of a case for failure to state a claim under Rule 12(b)(6), the complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
> need detailed factual allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires more than labels and

3

conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (alteration in original) (citations omitted).  The Court elaborated on the standard in *Ashcroft v. Iqbal*:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. 1937, 1949-50 (2009) (alteration in original) (citations omitted).  Therefore, under the pleading standard outlined in *Twombly*, the court assumes the *facts* recited in the complaint are true, "construe[s] the complaint in the light most favorable to plaintiff," and determines whether a plaintiff has stated a *plausible* claim.  *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (internal quotation marks and citation omitted).

### III. DISCUSSION

4

In moving for dismissal, Defendants argue that Detective Lego's § 1983 claims fail as a matter of law. Specially, Defendants aver that the accidental shooting of a fellow police officer does not give rise to claims under the Fourth and Fourteenth Amendments[1] and that Lego cannot maintain supervisory liability claims against Cochran and Gerds in their individual capacity. Alternatively, Defendants maintain that they are entitled to qualified immunity and Plaintiffs' claims, including Lego's state-law gross negligence and Mrs. Lego's loss of consortium claims, are barred by the Michigan Firefighter's Rule, Mich. Comp. Laws §§ 600.2965-.2967, and the Michigan Worker's Disability Compensation Act ("WDCA"), Mich. Comp. Laws §§ 481.101-.941. Because the court finds that Lego's § 1983 claims fail as a matter of law, and because the court will decline to exercise supplemental jurisdiction of Plaintiffs' state-law claims, the court need not address whether the Michigan Firefighter's Rule or the Michigan Worker's Compensation Act bar Plaintiffs' claims.[2]

### A. Fourteenth Amendment Claim Against Defendant Liss

---

[1]In their response, Plaintiffs acknowledge that Lego's Fourth Amendment claims fail as a matter of law because he does not allege that Liss intended to shot him. (Pls.' Resp. to Defs.' Mot. to Dismiss 5 n.3.) The court will therefore dismiss the Fourth Amendment claims against all Defendants.

[2] Plaintiffs' request in footnote 14 of their response for additional discovery to determine whether the WDCA in fact bars their claims, (Pls.' Resp. to Mot. to Dismiss 19 n.14), is moot in light of the court's conclusion below that Lego fails to plead constitutional violations for which he is entitled to relief under § 1983. Furthermore, discovery on the substance of Plaintiffs' claims is unnecessary in light of the uncontroverted nature of the material facts.

Lego alleges that Liss violated his Fourteenth Amendment substantive due process rights by acting with deliberate indifference when Liss failed to follow established safety protocols, participated in the apprehension of Bronson knowing that he was not properly trained, and accidentally shot him.  "[T]he substantive component of the [Fourteenth Amendment] due process clause insulates citizens against the arbitrary exercise of governmental power."  *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 823, 845-46 (1998)).  "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  *Lewis*, 523 U.S. at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)).  In other words, certain government action, regardless of the process afforded, can run afoul of an individual's rights.  When an executive officer's action is at issue, as is the case with Lego's allegations, the action violates substantive due process "only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"  *Id.* at 847 (quoting *Collins* , 503 U.S. at 128).  The "shocks the conscience" standard, however, is not susceptible to a mechanical application and what may shock the conscience is one instance may not in another  *Id.* at 850.  "In situations wherein the implicated state, county, or municipal agent(s) are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action . . . , their actions will be deemed conscience-shocking if they were taken with 'deliberate indifference' towards the plaintiff's federally protected rights."  *Claybrook*, 199 F.3d at 359 (citing *Lewis*, 523 U.S. at 851-52).  However, "[i]n contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation . . . , public servants' reflexive actions 'shock the conscience'

6

only if they involved force employed 'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline.'" *Id.* (quoting *Lewis*, 523 U.S. at 852-54).

In the instant case, Lego's allegations that Liss acted "recklessly, unreasonably" and with "deliberate indifference" to his safety are insufficient to state a claim under the Fourteenth Amendment because only allegations of malicious acts done for the very purpose of causing harm will "shock the conscience" in situations where a law enforcement officer is confronted with "rapidly evolving, fluid and dangerous" situations which preclude deliberation. *Id.* Here, the uncontroverted facts show that Liss arrived at the parking lot knowing that numerous officers had seen Bronson brandishing a handgun and observed his fellow officers in the tactical "stacking" formation near the store entrance. (Compl. ¶ 20.) Shortly after Liss took his position in the "stacking" formation, Bronson was confronted and raised his gun, aiming at the officers. (*Id.* ¶¶ 21-22.) The dangerous and unpredictable nature of the situation when Liss arrived and ultimately confronted an armed Bronson did not afford the kind of "reasonable opportunity to deliberate various alternatives" noted in *Claybrook*, 199 F.3d at 359, before using his weapon to defend himself and his fellow officers. Lego's suggestion that the deliberate indifference standard should apply because Liss "owed a duty to follow standard accepted safety protocols," (Compl. ¶ 33), and "had sufficient opportunity to determine that he was untrained and ill-prepared to assist CRT in apprehending Bronson," (Pls.' Resp. To Defs.' Mot. to Dismiss 6), lacks merit and is belied by the undisputed facts. In *Neal v. St. Louis County Board of Police Commissioners*, 217 F.3d 955 (8th Cir. 2000), a case cited by both Plaintiffs and

7

Defendants, the United States Court of Appeals for the Eighth Circuit rejected a similar argument in which "friendly fire" resulted in tragedy. There, an undercover drug buy ended with the suspect firing his gun at one of the undercover officers. The officer's partner, a defendant in the case, returned fire and two rounds from his weapon struck the other officer, killing him. *Neal*, 217 F.3d at 957. Like Lego in this case, the deceased officer's estate argued that the defendant officer's preconfrontation decisions to participate in the undercover drug deal and to contravene department safety policies should be analyzed under the deliberate indifference standard because the defendant had a reasonable opportunity to contemplate his decisions prior to the confrontation. *Id.* at 959. The Eighth Circuit rejected the estate's argument, however, concluding that in light of the facts of the case, "it is inappropriate to look outside the time period immediately preceding [defendant's] decision to fire his gun to determine whether [defendant's] conduct was truly conscience shocking" and further observed that "[p]olice department guidelines and policies do not create constitutional rights under the substantive due process clause of the Fourteenth Amendment." *Id.* This court agrees with the reasoning in *Neal*, and finds that the primary focus of the inquiry as to whether Liss's actions "shock the conscience" should be on the moments immediately preceding his decision to fire his weapon. Because that decision was made in a "rapidly evolving, fluid, and dangerous predicament," *Claybrook*, 199 F.3d at 359, Lego must show that Liss acted "'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline,'" *Id.* (quoting *Lewis*, 523 U.S. at 853), and the complaint, Lego concedes, is devoid of any allegations that Liss acted with an intent to cause harm to him.

8

Moreover, even were the court to accept Lego's invitation to focus on Liss's initial decision to participate in the "stacking" formation, the deliberate indifference standard remains unavailing.  Unlike the defendant in *Neal*, who contemplated his participation in the undercover drug buy more than an hour before the confrontation, Liss's decision to join the "stacking" formation was made in the midst of an armed robbery in progress—a quintessentially "rapidly evolving and dangerous" situation.  To suggest that a law enforcement officer, upon arriving at the scene of a violent crime in progress, has "sufficient opportunity" to contemplate the possible consequences of his chosen course of action before electing to participate in the apprehension of an armed suspect is simply unreasonable.  The public expects its police officers to make instantaneous, nearly instinctual judgments in such situations, trusting that training and experience will carry the day.  As a result, in order to maintain a substantive due process claim, a plaintiff such as Lego must show that a decision such as Liss's in this case was made with an actual intent to harm.  *Id.*  Accordingly, while Liss's decision to fire may have been negligent, assuming the legitimacy of Lego's allegation that Liss was not properly trained and did not follow proper safety protocols, it does not constitute "an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment," *Lewis*, 523 U.S. at 840.  Lego, therefore, fails to state a cause of action under § 1983.

## B. Fourteenth Amendment Supervisory Liability Claims Against Defendants Cochran and Gerds

Lego's § 1983 supervisory liability claims against Sergeant Cochran and Lieutenant Gerds also fail as a matter of law.  In his complaint, Lego alleges that "Gerds

9

and Cochran owed a duty to properly train, supervise and direct the officers under their

command," and "recklessly, unreasonably, . . . and in deliberate indifference to Lego's

safety, directed and permitted Liss to participate with CRT in the apprehension of

Bronson."  (Compl. ¶¶ 31-32.)  To maintain a supervisory liability claim under § 1983,

"liability of [the] supervisory personnel must be based on more than the right to control

employees."  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

> A supervisor is not liable under § 1983 for failing to train unless the
> supervisor "either encouraged the specific incident of misconduct or in
> some other way directly participated in it.  At a minimum a plaintiff must
> show that the official at least implicitly authorized, approved, or knowingly
> acquiesced in the unconstitutional conduct of the offending officers."

*Everson v. Leis*, 556 F.3d 484, 495 (6th Cir.2009) (quoting *Shehee v. Luttrell*, 199 F.3d

295, 300 (6th Cir.1999)).  Furthermore, it is axiomatic that "[w]ithout an underlying

constitutional violation, [a plaintiff] cannot maintain her supervisory and municipal

liability claims."  *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 471 (6th Cir. 2006);

*see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) (stating

that "if [a police officer] inflicted no constitutional injury on [a plaintiff], it is inconceivable

that [a city and its police commission] could be liable to [ the plaintiff]").  Because the

court has already determined that Liss's alleged conduct does not constitute a violation

of Lego's substantive due process rights and Lego admits that he fails to state a claim

under the Fourth Amendment, there is no underlying constitutional violation upon which

to maintain supervisory liability claims against Cochran or Gerds.  The court will dismiss

Lego's § 1983 claims against these Defendants.

## C. Dismissal Without Prejudice of State-Law Claims

Having concluded that Lego's claims under § 1983 fail as a matter of law, the court declines to exercise supplemental jurisdiction over his state-law claims.  The United States Court of Appeals for the Sixth Circuit has stated that when all federal claims are dismissed before trial, pendant state-law claims should normally be dismissed or remanded to the state court.  *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir.1996).  Only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial." *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991).  Here, because the case has not proceeded past the initial pleadings phase, no interests in judicial economy exist, overwhelming or otherwise.  Accordingly, Lego's gross negligence claim and Mrs. Lego's loss of consortium claim will be dismissed without prejudice.

## III. CONCLUSION

IT IS ORDERED that Defendants' "Motion to Dismiss" [Dkt. # 11] is GRANTED. Plaintiff Michael Lego's § 1983 claims are DISMISSED WITH PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(6).

IT IS FURTHER ORDERED that Plaintiffs' state-law gross negligence and loss of consortium claims are DISMISSED WITHOUT PREJUDICE.

                                          s/Robert H. Cleland
                                          ROBERT H. CLELAND
                                          UNITED STATES DISTRICT JUDGE

Dated:  February 3, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 3, 2012, by electronic and/or ordinary mail.

     s/Lisa Wagner                           
Case Manager and Deputy Clerk
(313) 234-5522